

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| CLYDE MARCUS JONES II, DENNIS PHILLIPS, and DEBORAH PHILLIPS, *on behalf of themselves and others similarly situated*,  Plaintiffs, vs. DUKE ENERGY CORPORATION and DUKE ENERGY CAROLINAS, LLC, Defendants. | Civil Action No. 3:24-1281-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

### I.   INTRODUCTION

Plaintiffs Clyde Marcus Jones II, Dennis Phillips, and Deborah Phillips, on behalf of themselves and others similarly situated, (collectively, Plaintiffs) filed this putative class action in the Kershaw County Court of Common Pleas against Defendants Duke Energy Corporation (Duke Energy) and Duke Energy Carolinas, LLC (DEC) (collectively, Defendants).  Defendants removed the matter to this Court, which has jurisdiction under 28 U.S.C. § 1332.

Pending before the Court is Defendants' motion to dismiss Plaintiffs' amended complaint for failure to state a claim.  Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court Defendants' motion will be granted in part and denied in part.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs are owners of waterfront property located on Lake Wateree in South Carolina. Lake Wateree was created by Defendants in 1919, and it spans more than twenty-one square miles across Fairfield, Kershaw, and Lancaster Counties.

In 1923, Defendants developed a reservoir mosquito control program (MCP) to abate the threat of malaria presented by large bodies of stagnant water. Until 2016, Defendants used the MCP to disseminate into Lake Wateree a mixture of motor and transformer oil containing polychlorinated biphenyls (PCBs). Plaintiffs allege Defendants continued administering the MCP, notwithstanding evidence linking PCB exposure to severe adverse health effects and despite the United States Environmental Protection Agency's 1979 ban on further production of PCBs.

Plaintiffs contend, "[b]y the early 1990s, information came to light indicating that bodies of water in South Carolina, including Lake Wateree, had been contaminated by PCBs." Amended Complaint ¶ 56. Moreover, Plaintiffs assert, "[s]ince at least 2009, Lake Wateree has . . . been continuously subject to [the South Carolina Department of Health and Environmental Control (SCDHEC)]'s restrictive consumption guidance based upon unsafe levels of PCBs detected in multiple species of fish within the water." *Id.* ¶ 63.

Plaintiffs maintain Defendants "hid their use of [PCBs] from the public and . . . engaged in studies that artificially manipulated the scientific data to lead the public and, specifically, waterfront homeowners to believe contamination was not an issue." *Id.* ¶ 12. And, "as a direct result of Defendants' actions in spraying harmful PCBs," Plaintiffs allege, "Lake Wateree's waters and waterbeds were inundated with harmful PCBs, which thereafter accumulated, invading the area's biological, aquatic, and ecological environment and encroaching upon Plaintiffs' property rights." *Id.* ¶ 13.

Therefore, as the Court stated above, Plaintiffs filed this putative class action in the Kershaw County Court of Common Pleas. Plaintiffs assert claims of negligence, gross negligence, strict liability, trespass, private nuisance, and unjust enrichment.

As the Court also mentioned earlier, Defendants removed the matter to this Court and filed this motion to dismiss. Plaintiffs responded, and Defendants replied. Having been fully briefed on the relevant issues, the Court will now adjudicate the motion.

### III. STANDARD OF REVIEW

A party may move to dismiss a complaint based on its "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss under Rule 12(b)(6), the complaint must have "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss for failure to state a claim, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). But, the Court need not "accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 244.

"[A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6) . . . generally cannot reach the merits of an affirmative defense . . . . But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached

3

by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Even still, "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Id.* (emphasis omitted) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993)).

IV.   **DISCUSSION AND ANALYSIS**

   A.   *Whether the Court should dismiss Duke Energy as an improper party*

Defendants first argue the Court should dismiss Duke Energy as an improper party. They assert Duke Energy "did not commit, participate in, direct, or authorize decisions as to the creation, operation, continuance and/or discontinuance of the [MCP], nor is it the successor to any such entity." Defendants' Motion at 1 n.1. Instead, Defendants maintain, "Duke Energy is the publicly traded holding company of DEC and other utilities." *Id.*

Plaintiffs, on the other hand, contend Duke Energy is properly named. Plaintiffs emphasize "questions surrounding [Duke Energy] involve its ownership and responsibility over Lake Wateree, not merely its participation in the MCP." Plaintiffs' Supplement at 1. Plaintiffs further posit the manner in which Duke Energy chose to execute such ownership and "responsibility, including through delegation, is an appropriate topic for discovery." *Id.* at 4.

Considering the allegations set forth in the amended complaint, the Court agrees with Plaintiffs. *See, e.g.*, Amended Complaint ¶ 19 ("At all times relevant to this Complaint, . . . Duke Energy . . . has been the parent and owner of [DEC.]"); *id.* ¶ 21 ("DEC is . . . Duke Energy's wholly owned subsidiary operating in North and South Carolina and is directly responsible for providing electric power and related services to millions of customers across South Carolina, including surrounding Lake Wateree."); *id.* ¶ 22 ("DEC is directly responsible for managing, maintaining, and ensuring the safety and satisfactory operation of several of . . . Duke Energy's

4

assets, including Lake Wateree, a reservoir owned by . . . Duke Energy and operated by . . . DEC."); *id.* ¶ 23 ("Since the early 1900s, . . . Defendants (and their predecessors) . . . have been charged with the responsibility of maintaining and treating significant portions of land and water within the state of South Carolina, including those areas that form the basis of this dispute."). Therefore, the Court will deny Defendants' motion to dismiss on this ground.

### B.     *Whether the Court should dismiss the amended complaint for failure to plausibly allege any injury*

Defendants next argue the Court should dismiss the amended complaint because Plaintiffs have failed to plausibly allege any injury. Specifically, Defendants assert Plaintiffs have neglected to advance any manner in which Defendants interfered with, or infringed upon, their rights.

Plaintiffs, however, declare they have repeatedly alleged "Defendants' actions in dumping toxic PCBs into the water adjoining and/or including Plaintiffs' properties caused Plaintiffs to suffer multiple injuries, including diminution in the value of their properties, loss of the use and enjoyment of their properties, degradation of their natural resources, and infringement upon their property rights." Plaintiffs' Response at 5.

Defendants evidently would have the Court evaluate the amended complaint under a fact pleading standard. The Federal Rules of Civil Procedure, however, "replaced fact pleading with notice pleading." *Thomson v. Washington*, 362 F.3d 969, 970 (7th Cir. 2004); *see Twombly*, 550 U.S. at 1974 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). Accordingly, the Court need only consider whether the amended complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570)).

Here, Plaintiffs allege they have "experienced and will continue to experience interference and infringement with their right to peaceful enjoyment of their properties, permanent diminution in value, as well as other injuries caused by Defendants' conduct." Amended Complaint ¶ 16; *see id.* ¶¶ 151–52, 161, 174, 183 (stating damages include diminution of property values, degradation and loss of natural resources, loss of use and enjoyment of property, infringement upon inalienable property rights, economic and financial loss, and other personal and emotional injuries). These allegations, which the Court accepts as true for purposes of this motion, support Plaintiffs' claims they have been injured by Defendants' actions. Thus, the Court will deny Defendants' motion on this ground.

      **C.**    ***Whether the Court should dismiss the amended complaint as barred by the three-year statute of limitations***

Defendants also contend the Court should dismiss the amended complaint because all of Plaintiffs' claims are barred by the three-year statute of limitations. *See* S.C. Code Ann. § 15-3-530(3), (5) (explaining a three-year limitations period applies to "action[s] for trespass upon or damage to real property" and "action[s] for . . . any injury to the person or rights of another, not arising on contract and not enumerated by law").

Plaintiffs, on the other hand, posit the amended complaint contains questions of fact as to when their claims accrued. Moreover, Plaintiffs assert Defendants should be equitably estopped from raising the statute of limitations defense because "Defendants . . . engage[d] in a concerted effort to hide information about the [MCP] to negate the potential public impact of fish consumption advisories that underplayed the level of contamination in Lake Wateree." Plaintiffs' Response at 13.

Initially, the South Carolina Supreme Court has determined the doctrine of laches, rather than the statute of limitations, applies to claims of unjust enrichment. *See Thomerson v. DeVito*,

6

844 S.E.2d 378, 380–81 (S.C. 2020); *Dema v. Tenet Physician Services-Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C. 2009).  The Court thus concludes the defense is inapplicable to Plaintiffs' unjust enrichment claim.

Turning now to Plaintiffs' remaining claims, the Court reiterates "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6) . . . generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman*, 494 F.3d at 464.  Even still, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached . . . . only . . . if all facts necessary to the . . . defense 'clearly appear[] on the face of the complaint.'" *Id.* (alteration in original) (emphasis omitted) (quoting *Forst*, 4 F.3d at 250).  Here, though, the Court is unable to conclude all necessary facts clearly appear on the face of the amended complaint.

In South Carolina, "[t]he statute [of limitations] runs from the date the injured party either kn[ew] or should have known by the exercise of reasonable diligence that a cause of action ar[ose] from the wrongful conduct." *Dean v. Ruscon Corp.*, 468 S.E.2d 645, 647 (S.C. 1996).  But, "a defendant may be [equitably] estopped from claiming the . . . defense if some conduct or representation by the defendant has induced the plaintiff to delay in filing suit." *Hedgepath v. Am. Tel. & Tel. Co.*, 559 S.E.2d 327, 338 (S.C. Ct. App. 2001) (citations omitted).  And, "[w]hether the defendant's actions lulled the plaintiff into 'a false sense of security' is usually a question of fact." *Id.* at 360–61 (quoting *Dillon Cnty. Sch. Dist. No. Two v. Lewis Sheet Metal Works, Inc.*, 332 S.E.2d 555, 561 (S.C. Ct. App. 1985)).

Defendants argue Plaintiffs knew or should have known their claims arose by at least 2009.  *See* Amended Complaint ¶ 63 ("Since at least 2009, Lake Wateree has . . . been continuously subject to SCDHEC's restrictive consumption guidance based upon unsafe levels of PCBs detected

7

in multiple species of fish within the water."). Plaintiffs, on the other hand, allege they lacked such knowledge because Defendants "obfuscated the nature of the injury and concealed the cause, leading to misinformation about the impact of PCBs in Lake Wateree and whether the water has been appropriately managed by . . . Defendants." *Id.* ¶ 60.

Although the Court is unable to determine the veracity of Plaintiffs' allegations at this time, such allegations, if proven after discovery, could result in Defendants being equitably estopped from claiming the statute of limitations as a defense. The Court thus concludes the validity of this defense—which, again, is inapplicable to Plaintiffs' unjust enrichment claim—is better suited for summary judgment. Accordingly, the Court will deny Defendants' motion on this ground.

### D.     *Whether the Court should dismiss Plaintiffs' strict liability, trespass, and private nuisance claims for failure to allege a tangible invasion of their property rights*

Defendants further contend the Court should dismiss Plaintiffs' strict liability, trespass, and private nuisance claims because Plaintiffs "have not alleged the physical entry of any contaminant onto their properties." Defendants' Motion at 19. Plaintiffs, however, assert they have adequately pled "Defendants' conduct in dumping thousands of gallons of toxic chemicals constituted harmful invasions of [their] properties and property rights, including their littoral and/or riparian rights, actionable trespass, and unreasonable interference with Plaintiffs['] right to peaceful use and enjoyment of their properties, including unique rights incidental to waterfront properties." Plaintiffs' Response at 16.

Defendants are correct to the extent they argue strict liability and trespass claims require some allegation of physical harm or tangible invasion. *See, e.g., Clarke v. Greenville Cnty.*, 437 S.E.2d 117, 118–19 (S.C. 1993) (affirming summary judgment on strict liability and trespass claims where property owners failed to produce evidence of damages caused by contamination from a nearby landfill); *Babb v. Lee Cnty. Landfill SC, LLC*, 747 S.E.2d 468, 476–80 (S.C. 2013)

8

(declining to "recognize[] a cause of action for trespass solely from invisible odors, rather than from a physical invasion such as . . . water").

Under South Carolina law, though, waterfront property owners "possess a property right incident to their ownership of the bank and bed of a watercourse that is distinct from those rights that may be enjoyed by the public at large." *White's Mill Colony Inc. v. Williams*, 609 S.E.2d 811, 817 (S.C. Ct. App. 2005). Such "special rights [generally] allow abutting landowners to make 'reasonable use' of the body of water for any lawful purpose, whether for commerce or recreation." *Id.* (quoting *Lowe v. Ottaray Mills*, 77 S.E. 135, 136 (S.C. 1913)). And, regarding classification, "owners of land along rivers and streams are said to hold 'riparian' rights, while owners of land abutting oceans, seas, or lakes, are said to hold 'littoral' rights." *Id.* at 817–18.

Here, Plaintiffs have alleged contaminated water physically invaded the properties over which they hold littoral and/or riparian rights. *See* Amended Complaint ¶ 71 ("Once introduced, PCBs will remain in the environment, poisoning the soil and waterways, and absorbing into the tissue of aquatic and biological life[.]"); *id.* ¶ 115 ("[F]or years during the [MCP] and every year since it has ceased, SCDHEC has . . . f[ound] excessively dangerous levels of PCBs in the fatty tissue of fish in Lake Wateree and confirm[ed] that PCBs continue to contaminate the sediment, soil, and waterways."). The Court is therefore convinced Plaintiffs have plausibly alleged a physical invasion of their property rights. Consequently, the Court will deny Defendants' motion to dismiss Plaintiffs' strict liability and trespass claims on this ground.

As for Plaintiffs' private nuisance claim, the South Carolina Supreme Court has recognized a distinction between tangible and intangible property invasions, the latter of which "are properly characterized as giving rise to nuisance or negligence actions and cannot give rise to a trespass [or strict liability] action." *Babb*, 747 S.E.2d at 479 (citing *Adams v. Cleveland-Cliffs Iron Co.*, 602

N.W.2d 215, 222 (Mich. Ct. App. 1999)).  A physical invasion is thus unrequired to state a private nuisance claim, and the Court will deny Defendants' motion on this basis, as well.

### E.    *Whether the Court should dismiss Plaintiffs' negligence claim*

Defendants next assert the Court should dismiss Plaintiffs' negligence claim because Plaintiffs have failed to allege Defendants owed them a duty of care.  Plaintiffs, on the other hand, contend a duty of care arose when Defendants voluntarily undertook it and negligently created a risk of harm.

Under South Carolina law, "[a]n essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff.  Without a duty, there is no actionable negligence."  *Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78, 81 (S.C. 1998) (citing *Rogers v. S.C. Dep't of Parole & Cmty. Corr.*, 464 S.E.2d 330 (S.C. 1995)).  Although "there is no general duty to control the conduct of another or to warn a third person or potential victim of danger[,]" a duty may arise "where the defendant voluntarily undertakes [it]" and "where the defendant negligently or intentionally creates the risk[.]"  *Faile v. S.C. Dep't of Juvenile Just.*, 566 S.E.2d 536, 546 (S.C. 2002) (citations omitted).

Here, Plaintiffs allege "Defendants specifically promised Lake Wateree homeowners [in the Catawba-Wateree Relicensing Agreement] that Defendants were responsible for the fish and wildlife habitat, water quality, and conservation of land surrounding the lake, including shoreline management."  Amended Complaint ¶ 51.  Plaintiffs further contend Defendants "understood PCBs would remain permanently in the environment, were probable human carcinogens, and [were] toxic to humans, plants, and animals."  *Id.* ¶ 138.  Moreover, according to Plaintiffs, Defendants knew or should have known "use of harmful motor oils and transformer oils in [the MCP] contradicted best practices for disposal of PCBs[,]" *id.* ¶ 139, "PCBs used in [the MCP] had

10

accumulated in [Lake Wateree's] soil, groundwater, and wildlife[,]" *id.* ¶ 140, and "[Defendants'] use of PCBs permanently contaminated Lake Wateree," *id.* ¶ 148.

As above, the Court determines these allegations plausibly establish Defendants had a duty to warn waterfront property owners of PBC contamination because they voluntarily undertook a duty to care for Lake Wateree and negligently created the risk of harm.  Accordingly, Plaintiffs have stated a negligence claim, and the Court will deny Defendants' motion to dismiss this claim.

### F.     *Whether the Court should dismiss Plaintiffs' gross negligence claim*

Defendants also contend the Court should dismiss Plaintiffs' gross negligence claim because Plaintiffs have failed to allege Defendants engaged in conduct amounting to gross negligence.  But, Plaintiffs insist they have pled facts sufficient to support this claim.

The South Carolina Supreme Court has explained "[g]ross negligence is the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do."  *Clyburn v. Sumter Cnty. Sch. Dist. No. 17*, 451 S.E.2d 885, 888 (S.C. 1994) (citing *Richardson v. Hambright*, 374 S.E.2d 296 (S.C. 1988)).  In other words, "gross negligence is the failure to exercise slight care."  *Id.*

Plaintiffs allege, "[r]ather than address the[] issues" caused by the MCP, "Defendants engaged in self-serving studies to purposefully obfuscate the impact of PCB contamination . . . ." Amended Complaint ¶¶ 141–42.  Additionally, Plaintiffs posit Defendants both "[k]nowingly conceal[ed] the source of PCB contamination" and recklessly "[f]ail[ed] to . . . maintain records and . . . investigate the levels of contamination[.]"  *Id.* ¶ 149.

Again, the Court holds these allegations plausibly indicate Defendants failed to exercise slight care in their maintenance of Lake Wateree and administration of the MCP.  Plaintiffs have thus stated a claim for gross negligence, and the Court will deny Defendants' motion to dismiss this claim, as well.

### G.     *Whether the Court should dismiss Plaintiffs' strict liability claim*

Defendants next posit the Court should dismiss Plaintiffs' strict liability claim because "South Carolina courts have consistently declined to extend the parameters of the cause of action to cover disposal of hazardous waste." Defendants' Motion at 24. Plaintiffs, on the other hand, state they "are not aware of any controlling case law holding . . . the specific conduct in which Defendants engaged fails to qualify as ultrahazardous, and [they] have adequately pled in their [amended] [c]omplaint that it does." Plaintiffs' Response at 22 (emphasis omitted).

Although "South Carolina has adopted strict liability standards for cattle trespass, product liability, and unprovoked dog bite cases, [the state] legislature and Supreme Court have not declared that one engaged in handling dangerous chemicals is strictly liable for damages caused by those activities." *Ravan v. Greenville Cnty.*, 434 S.E.2d 296, 305–06 (S.C. Ct. App. 1993) (footnote omitted). In any event, "[w]hether an activity is abnormally dangerous must be determined on a case by case basis." *Id.* at 306 (citing *T & E Indus., Inc. v. Safety Light Corp.*, 587 A.2d 1249, 1259 (N.J. 1991)). And, "authorities are split over whether the court or the jury should make the determination that a particular activity is abnormally dangerous." *Id.* (citations omitted).

Here, the Court concludes the mere fact South Carolina has yet to recognize the MCP as an abnormally dangerous activity fails to "justify dismissal under Rule 12(b)(6). On the contrary, Rule 12(b)(6) dismissals 'are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development.'" *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004)). Indeed, "plaintiffs should be given 'an opportunity to develop evidence before the merits are resolved.'" *Id.* (quoting *Metts v. Murphy*, 363 F.3d 8, 11 (1st Cir. 2004)). The Court will therefore deny Defendants' motion to dismiss this claim, too.

### H. Whether the Court should dismiss Plaintiffs' unjust enrichment claim

Defendants further assert the Court should dismiss Plaintiffs' unjust enrichment claim because Plaintiffs have neglected to allege they conferred any benefit on Defendants. Plaintiffs, though, maintain "Defendants have publicly acknowledged that they realized financial and other benefits from shoreline management [by waterfront property owners]." Plaintiffs' Response at 26. In reply, Defendants insist "Plaintiffs do not allege that they maintained their properties 'in consideration for' anything to be provided by Defendants." Defendants' Reply at 14.

To state a claim of unjust enrichment in South Carolina, a plaintiff must plausibly allege "he conferred a non-gratuitous benefit on the defendant[.]" *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 167 (S.C. 2003) (citing *Niggel Assocs., Inc. v. Polo's of N. Myrtle Beach, Inc.*, 374 S.E.2d 507 (S.C. Ct. App. 1988)). In other words, the plaintiff must establish he conferred the benefit "(1) at the defendant's request or (2) in circumstances where the plaintiff reasonably relies on the defendant to pay for the benefit and the defendant understands or ought to understand that the plaintiff expects compensation and looks to him for payment." *Niggel*, 374 S.E.2d at 509. Critically, "[i]t is not enough that the defendant has knowledge of the plaintiff's conduct; he must have induced the plaintiff to confer the benefit." *Id.*

Here, Plaintiffs allege Defendants' representative George Swearingen (Swearingen) "indicated that part of . . . Defendants' plan in maintaining the shorelines and keeping them clean was providing property to homeowners adjoining the lakes." Amended Complaint ¶ 83. Indeed, during a 1970 workshop on mosquito control, Swearingen stated, "The shoreline development of cottage sites is one of the most permanent and economical means available to inhibit mosquito breeding. . . . [I]t is shoreline development by cottages—leasing these lots to individuals at a very nominal fee to establish some recreational family aspects of the thing[—t]hat keeps the shoreline clean." George T. Swearingen, Env't Health Manager, Duke Power Co., Present Approaches to

13

Mosquito Control in North Carolina (May 4, 1970), *in* Proceedings Workshop on Mosquito Control in North Carolina, Aug. 1970, at 33, 35.

Plaintiffs, however, have neglected to allege any manner in which Defendants induced them to maintain the shoreline without compensation. Rather, Swearingen's statements indicate this benefit was conferred upon Defendants entirely in Plaintiffs' own self-interests. *See id.* at 35 ("It's funny, but people will litter anywhere but their own front yard. So consequently, we have pretty clean shorelines where we've leased these lots."); *see also, e.g.*, *Campbell v. Robinson*, 726 S.E.2d 221, 228 (S.C. Ct. App. 2012) (concluding the donor of an engagement ring was unentitled to directed verdict or judgment notwithstanding the verdict on his unjust enrichment claim where the record lacked evidence the donor "presented the ring to [the donee] at her request[,] . . . . permitted [the donee] to keep the ring at her request[,] or . . . reasonably relied upon [the donee] to pay for the ring").

Simply put, although Plaintiffs plausibly allege they conferred a benefit upon Defendants, Plaintiffs have failed to establish Defendants induced them to do so. The Court will therefore grant Defendants' motion to dismiss Plaintiffs' unjust enrichment claim.

### I.     *Whether the Court should strike Plaintiffs' request for punitive damages*

Finally, relying on the arguments discussed above, Defendants assert the Court should strike Plaintiffs' request for punitive damages. Plaintiffs insist this request is premature, as their allegations support a jury finding Defendants engaged in willful or wanton conduct.

For the reasons discussed above, the Court determines this issue is best addressed at the summary judgment stage. Additional discussion is thus unnecessary, and the Court will deny Defendants' motion on this ground.

## V. CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Specifically, Defendants' motion is granted as to Plaintiffs' unjust enrichment claim, which is dismissed without prejudice, and denied as to Plaintiffs' remaining claims. The Court will, however, grant Plaintiffs leave to amend their complaint as to the unjust enrichment. Such amendment shall be filed within fifteen days after the entry of this Order.

Finally, the stay granted on February 25, 2025, is hereby lifted.

**IT IS SO ORDERED.**

Signed this 6th day of August 2025, in Columbia, South Carolina.

                                                        s/ Mary Geiger Lewis
                                                       MARY GEIGER LEWIS
                                                       UNITED STATES DISTRICT JUDGE