**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Clyde Marcus Jones, II; Dennis Phillips, and Deborah Phillips, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Duke Energy Corporation and Duke Energy Carolinas, LLC,<br><br>        Defendants. | Civil Action No.: 3:24-cv-1281-MGL |

<u>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**</u>

<u>**MOTION FOR CLASS CERTIFICATION**</u>

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................................1

BACKGROUND .....................................................................................................................................2

A.  Factual Background ...................................................................................................................2

B.  Procedural Background..............................................................................................................9

LEGAL STANDARD...........................................................................................................................10

THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23 AND SHOULD BE
       CERTIFIED ......................................................................................................................... 12

A.  The Class is Readily Identifiable ............................................................................................12

B.  The Class Satisfies the Requirements of Rule 23(a) ..............................................................14

    1.  Numerosity is met because joinder is impracticable..................................................14

    2.  Commonality is met because Defendants' conduct creates common questions of law
        and fact........................................................................................................................14

    3.  Typicality is met because Plaintiff has the same claims and would be vindicated by
        the same rulings as the Class......................................................................................15

    4.  No conflicts of interest exist and Plaintiff has and will fairly and adequately represent
        the interests of the Class.............................................................................................17

C.  The Class Satisfies the Requirements of Rule 23(b)..............................................................18

    1.  Common Questions of Fact and Law Predominate....................................................18

CONCLUSION.....................................................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)............................................................ 10, 18

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ......................................... 11

*Babb v. Lee Cty. Landfill SC, LLC*, 747 S.E.2d 468 (S.C. 2013) ........................................... 21, 22

*Bates v. Tenco Services, Inc.*, 132 F.R.D. 160 (D.S.C. 1990) ...................................................... 16

*Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360 (7th Cir. 2015)...................................................... 19

*Bertulli v. Independent Ass'n of Continental Pilots*, 242 F.3d 290 (5th Cir. 2001) ..................... 24

*Brunson v. Louisiana-Pac. Corp.*, 266 F.R.D. 112, 120 (D.S.C. 2010) ....................................... 15

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) .................................................... 18

*Career Counseling, Inc. v. Amsterdam Printing & Litho, Inc.*, No. 3:15-CV-05061-JMC, 2017

   WL 279768 (D.S.C. Jan. 23, 2017)....................................................................................... 12

*Central Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628 (D.S.C.), aff'd 6 F.3d 177 (4th Cir.

   1993)....................................................................................................................................... 14

*Clark v. Greenville Cnty.*, 437 S.E.2d 117 (S.C 1993) ................................................................. 22

*Deason v. Southern Railway*, 140 S.E. 575  (S.C. 1914)............................................................... 22

*Edwards v. Lexington Cnty. Sheriff's Dep't*, 688 S.E.2d 125 (S.C. 2010) ................................... 21

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968) ................................................. 10, 11

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) ................................................................ 12

*FWK Holdings, LLC v. Merck & Co.*, 7 F.4th (4th Cir. 2021) ...................................................... 16

*Gardner v. Country Club, Inc.*, No; 4:13-CV-03399- BHH, 2017 WL 11613887 (D.S.C. Jan. 26,

   2017)............................................................................................................................. 14, 15, 19

*Graham v. Town of Lotta*, 789 S.E.2d 71 (S.C. Ct. App. 2016) ................................................... 22

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003).......................................... 10, 11

*Gunnells*, 348 F.3d at 429 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996) .................................................................................................................... 18, 19, 24

*In re A.H. Robins*, 880 F.2d 709 (4th Cir.1989) ........................................................... 10

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability*, 241 F.R.D. 185 (S.D.N.Y. 2007) 16

*Johnson v. Hoechst Celanese Corp.*, 453 S.E.2d 908 (S.C. Ct. App. 1995) ................................. 22

*Klay v. Humana, Inc.,* 382 F. 3d 1241 (11th Cir. 2004) ................................................. 19

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) .......................................... 11, 19

*M.D. v. Perry*, 675 F.3d 832 (5th Cir. 2012) ................................................................ 15

*Matthews v. Buel, Inc.*, No. CA 7:11- 162-TMC, 2012 WL 1825273 (D.S.C. May 18, 2012) .... 17

*Miller v. City of Camden*, 494 S.E.2d 813 (S.C. 1997) ..................................................... 21

*Millwood v. State Farm Life Ins. Co.,* No. 7:19-CV-01445-DCC, 2022 WL 4396199 (D.S.C. Sept. 23, 2022) ....................................................................................................... 14

*Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370 (D.S.C. 2015) ....................................... 14

*Oil Spill by Oil Rig Deepwater Horizon*, 910 F.Supp.2d 891 (E.D.La. 2012) .............................. 15

*Parker v. Asbestos Processing, LLC*, No. 0:11-CV-01800-JFA, 2015 WL 127930 (D.S.C. Jan. 8, 2015) ................................................................................................................ 15

*Peden v. Furman University*, 151 S.E. 907 (S.C. 1930) ..................................................... 22

*Pennington v. Fluor Corp.*, 327 F.R.D. 89 (D.S.C. 2018) ................................................... 12

*Polk v. Montgomery Cnty., Md.*, 782 F.2d 1196 (4th Cir. 1986) ............................................. 12

*Ralph v. McLaughlin*, 834 S.E.2d 213 (S.C. Ct. App. 2019) ................................................. 22

*Ravan v. Greenville County¸*315 S.C. 447, 434 S.E.2d  (S.C. Ct. App. 1993) ............................. 21

*Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451 (D.N.J. 2009) ..................................... 12, 13

*Russell v. City of Columbia*, 406 S.E.2d 338 (S.C. 1991) ................................................. 21

*S.C. Nat. Bank v. Stone*, 139 F.R.D. 325 (D.S.C. 1991)................................................................. 17

*Sherill v. Southern Bell Tel. & Tel. Co.*, 260 S.C. 294 S.E.2d 283 (S.C. 1973) ........................... 21

*Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981) ................................................................................. 13

*Snow v. City of Columbia*, 409 S.E.2d 797 (S.C. Ct. App. 1991)................................................. 22

*Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183 (E.D.Va. 2015) ........................................ 24

*Spurlock v. Wexford Health Sources, Inc.*, C/A No. 3:23-cv-0476, 2025 WL 2085053

    (S.D.W.Va. Jul. 24, 2025) .......................................................................................................... 24

*Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, (4th Cir. 2010)............................................. 19

*Stillmock v. Weis Mkts., Inc.*, 385 Fed.Appx. 267 (4th Cir. 2010) .............................................. 24

*Strong v. Winn-Dixie Stores, Inc.*, 125 S.E.2d 628 (S.C. 1962) ................................................... 22

*Sullivan v. Saint-Gabain Performance Plastics Corp.*¸No. 5:16-cv-125, 2019 WL 8272995, at

    (D.Vt. Aug. 23, 2019) ................................................................................................................ 13

*T&E Industries, Inc. v. Safety Light Corp.*, 123 N.J. 371, 587 A.2d 1249 (N.J. 1991) ............... 21

*Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99 (W.D. Va. 2000) ............................................... 19

*TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136 (D.S.C. 2018) ....................... 19

*Thomas v. Louisiana-Pac. Corp.*, 246 F.R.D. 505, (D.S.C. 2007) ............................................... 19

*Tillman v. Highland Indus., Inc.*, No. 4:19-CV-02563-SAL, 2021 WL 4483035 (D.S.C. Sept. 30,

    2021)....................................................................................................................... 12, 21, 22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 339, 131 S. Ct. 2541 (2011) .............................. 18

*Walter v. Buffets Inc.*, No. 6:13-CV-02995-JMC, 2015 WL 3903382 (D.S.C. June 25,

    2015).......................................................................................................................................... 12

*Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164 (4th Cir. 2010)................................................... 11

*Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023) .................................................................... 11

iv

**Other Authorities**

1 *Newberg on Class Actions* § 3:12 (5th ed. 2021) ...................................................................... 14

Plaintiff Clyde Marcus Jones, II respectfully moves this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), for certification of a class of waterfront property owners on Lake Wateree, South Carolina.  In support of his motion, Plaintiff states as follows:

## I.     INTRODUCTION

Plaintiff owns and resides on one of over 2,500 waterfront properties on Lake Wateree, a manmade recreational lake and hydroelectric reservoir in South Carolina owned and operated by Defendants Duke Energy Carolinas, LLC and Duke Energy Corporation (together, "Duke Energy"). From 1923 to 2017, Duke Energy carried out a coordinated Mosquito Control Program ("MCP") on Lake Wateree and other man-made reservoirs on the Catawba River. For the first 55 or so years of the MCP, Duke Energy employees controlled the mosquito population by liberally spraying oil containing carcinogenic chemicals known as Polychlorinated Biphenyls ("PCBs") on Lake Wateree's shorelines at regular intervals. The PCB-containing oil formed a slick on the shorelines which prevented mosquitoes from breeding in shallow waters. In 1979, the federal government outlawed the production of PCBs because they bioaccumulate in living organisms and cause harm to human and environmental health. Around this time, Duke Energy discontinued its "oiling" of the Lake Wateree shorelines with PCB-containing oils but continued mosquito spraying operations in Lake Wateree's many coves until 2017.

Today, the PCB contamination remains. That is because PCBs are persistent pollutants that last decades and do not biodegrade easily. And the PCBs introduced by Duke Energy's MCP continue to exist at dangerous levels in Lake Wateree. In 2010, the U.S. Environmental Protection Agency began testing fish in Lake Wateree and discovered dangerous levels of PCBs necessitating an ongoing consumption advisory from South Carolina state agencies. In 2022, a peer-reviewed

study concluded that the source of PCB contamination in Lake Wateree was, in fact, Duke Energy's MCP. This ongoing contamination has and continues to harm Plaintiff and his property rights.

Plaintiff now moves for class certification pursuant to Rule 23. For the reasons stated below, Plaintiff's proposed class satisfies the requirements of Rule 23(a) and (b) and the Court should grant his motion for class certification.

## II.    BACKGROUND

### A. Factual Background

#### 1.   Lake Wateree

Lake Wateree is a 21-square mile (13,025 acre) manmade lake and hydroelectric reservoir located in Kershaw, Fairfield, and Lancaster counties created when Duke Energy dammed the Catawba River in 1919. **Ex. A** (Duke Energy Carolinas, LLC Catawba-Wateree Project FERC Project No. 2232 Shoreline Management Plan, Oct. 3, 2016) at 4; Dkt. 38, First Amended Complaint ("FAC") at ¶ 47. The "second largest reservoir in the Catawba-Wateree system," Lake Wateree has "approximately 214.9 shoreline miles including islands." Ex. A. A map of Lake Wateree is depicted below.



According to county property tax records, approximately 2,625 privately owned properties front Lake Wateree. (*See* **Ex. B**, Jones_000308, Waterfront Property Addresses).

2

### 2. Plaintiff Clyde Marcus Jones II

Plaintiff Jones is the owner of Parcel Number 128-04-41-040, a 0.98-acre waterfront property located in Kershaw County on Lake Wateree's eastern shore. The approximate location of Mr. Jones's property is depicted below.



The property includes a single-family home and a small dock. *See* **Ex. C** Jones_000215 (Property Card).

### 3. Duke Energy

Defendant Duke Energy Corporation (NYSE: DUK), is "a Fortune 150 company headquartered in Charlotte, N.C.," and "one of America's largest energy holding companies." About Us—Our Company—Duke Energy, available at https://www.duke-energy.com/our-company/about-us (last accessed Sept. 30, 2025). The company's electric utilities serve "8.6 million customers in North Carolina, South Carolina, Florida, Indiana, Ohio, and Kentucky, and [i]ts natural gas utilities serve 1.7 million customers in North Carolina, South Carolina, Tennessee, Ohio, and Kentucky." *Id.* Defendant Duke Energy Carolinas is a subsidiary electric utility of Duke Energy Corporation, serving the Midlands and Upstate regions of South Carolina. *See* South Carolina Service Territory Map, available at https://www.duke-energy.com/-/media/pdfs/ssm-territory-maps/south-carolina-service-territory.pdf?rev=fb84344f1cd44303b2dd2b5ae78ba1d9

(last accessed Sept. 30, 2025).

Duke Energy owns and operates Lake Wateree under a license from the Federal Energy Regulatory Commission ("FERC"). *See generally* **Ex. A**. Under its FERC license, Duke Energy must maintain and manage Lake Wateree in a reasonable manner, which includes preserving its fish, wildlife habitats, water quality, and shoreline. FAC at ¶ 51 (citing Lake Wateree Perspective of the Catawba-Wateree Relicensing Agreement, available at: https://www.duke-energy.com/-/media/pdfs/community/wateree-agreement.pdf).

### 4. Duke Energy's Mosquito Control Program

In 1923, in response to lawsuits and criticism alleging that Duke Energy's reservoirs were causing the spread of malaria in adjoining communities, Duke Energy founder James B. Duke hired Dr. F.M. Boldridge to create a program to combat the disease. (*See* **Ex. D**, DUK_00000027-29); (**Ex. E** at DUK_00002369). Dr. Boldridge implemented the Mosquito Control Program ("MCP") upon Duke Energy's many reservoirs, including Lake Wateree, and ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* In 1997, Duke Energy's then-MCP Leader, Ken Manuel, described the reservoirs where Duke administered the program as ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ **Ex. D** at DUK_00000028.

Duke Energy first administered the MCP by "oiling" reservoir shorelines on a regular basis—spraying oil near the shores to create a slick barrier on the surface of the shallow waters to prevent mosquito breeding. *Id.* Duke Energy oiled the shorelines using a variety of substances including crankcase oil, fuel oil, and, significantly, transformer oil, DDT, and oil waste. *See* **Ex. E** at DUK_00002371 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

oil."); **Ex. F**, DUK_00000157-158

**Ex. G**, DUK_00000172

**Ex. H**, DUK_00000289-294

**Ex. I**, DUK_00000295-300

By 1989, Duke Energy replaced waste oil and transformer oil with Bacillus thuringiensis israelensis ("Bti"), a bacterial agent approved by the EPA for use in eliminating mosquito larvae. By the late 1990s, Duke Energy implemented spill prevention and containment measures specifically designed to prevent oil spills in water sources. **Ex. J**, DUK_ 00002051-2052.

. *Id.* at DUK_00002338

By 2000, Duke Energy rarely acknowledged their previous use of waste and transformer oils, and then, only in settings including company personnel.

Duke Energy was also reliant upon property owners around its impoundments to help the MCP succeed. *See e.g.,* **Ex. H**, at p. 292

Lakefront property owners were thus critical to achieve Duke Energy's objectives. Duke Energy also issued public statements and

5

press releases as part of its program. *See, e.g.,* Press Release, May 22, 2013, "Duke Energy mosquito control program in its 90th year," available at: https://news.duke-energy.com/releases/duke-energy-mosquito-control-program-in-its-90th-year.) (last accessed Oct. 1, 2025).

While Duke Energy often stressed the importance of homeowner vigilance in reducing mosquitoes around reservoirs, it never advised the lakefront property owners of Duke Energy's past use of toxic substances on Lake Wateree. Instead, Duke Energy reiterated that the MCP employed only government approved larvicides to target mosquitoes on these residential reservoirs. Duke Energy deliberately chose against disclosing its past practices to lakefront property owners. **Ex. E**, at DUK_00002371 ████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████

### 5. Polychlorinated Biphenyls ("PCBs")

Polychlorinated Biphenyls ("PCBs") are synthetic organic chemicals consisting of carbon, hydrogen, and chlorine atoms, widely used in industrial applications and "domestically manufactured from 1929 until manufacturing was banned in 1979." United States Environmental Protection Agency*,* Learn About Polychlorinated Biphenyls, available at https://www.epa.gov/pcbs/learn-about-polychlorinated-biphenyls (last accessed Sept. 30, 2025)[1].

---

[1] *See also* EPA Fact Sheet: Preventing and Detecting PCB Contamination in Used Oil Best Management Practices for Commercial and Municipal Used Oil Collection Centers, February,

PCBs were used extensively as coolants in hydraulic systems and as dielectric fluid in electrical equipment.[2] PCBs were categorized by manufacturers using a four-digit number, the last two digits denoting the chlorine content by weight.[3] PCBs were also commonly used in transformer oil and other hydraulic oil until the 1979 federal production ban.

PCBs are persistent environmental pollutants, as they "do not really break down once in the environment." *Id.* Indeed, PCBs "can remain for long periods cycling between air, water and soil" and "are also taken up into the bodies of small animals and fish. As a result, people who ingest fish may be exposed to PCBs that have bioaccumulated in the fish they are ingesting." *Id.*

Among the most widely studied environmental contaminants, PCBs have been found by many scientific studies to be toxic and carcinogenic to humans.[4] This is especially true where humans are exposed to PCBs that have been released into the environment (as opposed to in a factory or industrial setting). As the EPA has summarized:

> It is very important to note that the composition of PCB mixtures changes following their release into the environment. The types of PCBs that tend to bioaccumulate in fish and other animals and bind to sediments happen to be the most carcinogenic components of PCB mixtures. As a result, people who ingest PCB-contaminated fish or other animal products and contact PCB-contaminated sediment may be exposed to PCB mixtures that are even more toxic than the PCB mixtures contacted by workers and released into the environment.

*Id.*

---

2018, available at: www.epa.gov/system/files/documents/2022-04/pcbs_in_used_oil_fact_sheet_corrected2.pdf (last accessed Sept. 30, 2025).

[2] *Id.*

[3] *See* EPA Polychlorinated Biphenyls (PCBs) (Aroclors) available at: https://www.epa.gov/sites/default/files/2016-09/documents/polychlorinated_-biphenyls.pdf (last accessed Sept. 30. 2025).

[4] *See, e.g.,* Nat'l Center for Environmental Assessment, EPA (Sept. 1996) PCBs: Cancer Dose-Response Assessment and Application to Environmental Measures. Available at https://www.epa.gov/sites/default/files/2015-10/documents/pcbs_cancer_dose-response_assessment_and_application_to_environmental_mixtures.pdf (last accessed Sept. 30, 2025).

Because PCBs do not naturally biodegrade, they must be remediated through active measures. PCB environmental remediation is generally governed by EPA regulations. *See* Managing Remediation Waste from Polychlorinated Biphenyls (PCBs) Cleanups, available at https://www.epa.gov/pcbs/managing-remediation-waste-polychlorinated-biphenyls-pcbs-cleanups (last accessed Sept. 30, 2025).

### 6.  Duke Energy's Use of PCB-Containing Oils on Lake Wateree

As set forth in the FAC, for decades, Duke Energy applied toxic PCBs to the shorelines of Lake Wateree despite knowledge that these substances were harmful, would bioaccumulate, and that this manner of disposal "contradicted best management practices for the disposal of PCBs and was likely to result in contamination." FAC at 95; *see* Dkt. 49, at p. 3. Plaintiffs allege that Duke Energy engaged in a deliberate effort to hide their involvement in and to conceal the extent of the contamination. These efforts included self-serving scientific studies commissioned by Duke Energy to create an alternative narrative about Lake Wateree's PCB contamination, and public misrepresentations about their management practices. FAC at ¶¶ 58-60, 69, 100, 101, 102, 112. As alleged in the FAC, Duke Energy purposefully prevented identification of the sources of PCB contamination in Lake Wateree. *Id.* ¶ 111. Further, Duke Energy failed to warn of the risks associated with PCB contamination and failed to take steps to remediate or abate this contamination. *Id.* ¶ 113. In 2017, Duke Energy chose to end the MCP, citing financial efficiency. Program employees were apparently blind-sided by the decision[5].

By the 1960s, scientific research determined that PCBs posed a risk to human health. FAC at ¶ 40. In 1972, the United States' task force on PCBs issued a warning that the use of PCBs

---

[5] *See* Dave Vieser, *Cornelius Today*, "Duke Energy raids mosquito Spray Budget," (Feb. 7, 2017), available at: https://www.corneliustoday.com/duke-energy-raids-mosquito-spray-budget/ (last accessed Oct. 1, 2025).

should be restricted to "essential" or "non-replaceable" uses involving minimal human exposure. *Id.*at ¶¶ 40-41. By 1977, Duke Energy acknowledged their responsibility in administering an environmentally safe program on waterways under their control. **Ex. H** at p. DUK_00000289 █

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████ **Ex. L**, DUK_00000479-482. In these updates, Duke Energy confirmed extensive larviciding programs on several reservoirs including Lake Wateree but did not identify the type of larvicide used. Nor do Duke Energy's representations to the public acknowledge that Duke Energy dumped waste fuel and transformer fuel into the Lake.

## B. Procedural Background

Plaintiff originally filed suit in South Carolina state court alleging claims of negligence, gross negligence, strict liability, private nuisance, and unjust enrichment. On March 15, 2024, Duke Energy removed the case to this Court. Dkt. 1. On March 31, 2024, Plaintiff moved to remand the case to state court. Dkt. 13. The Court denied Plaintiff's motion to remand on November 4, 2024. Dkt. 19. Plaintiff filed the operative First Amended Complaint on December 11, 2024.

On January 23, 2025, Duke Energy moved to dismiss the First Amended Complaint for failure to state a claim and on other grounds. Dkt. 39. On August 6, 2025, the Court granted in part and denied in part Duke Energy's motion to dismiss. Dkt. 55. First, the Court denied Duke Energy's motion to dismiss Duke Energy Corporation as an improper party. *Id.* at 4-5. Second, the Court held that the FAC properly alleged injuries caused by Duke Power's actions; specifically, "diminution of property values, degradation and loss of natural resources, loss of use and

enjoyment of property, infringement upon inalienable property rights, economic and financial loss, and other personal and emotional injuries." *Id.* at 6. Third, the Court denied Duke Power's motion to dismiss on statute of limitations grounds, finding it better suited to summary judgment. *Id.* at 6-8. Fourth, the Court denied Duke Power's motion to dismiss on the ground that the FAC fails to allege an invasion of property rights, finding that "a physical invasion is [] unrequired." *Id.* at 8-10. Fifth, the Court held that the FAC plausibly alleged claims of negligence, gross negligence, and strict liability, but granted Duke Power's motion to dismiss the unjust enrichment claim. 10-14. Finally, the Court denied Duke Power's motion to strike the FAC's request for punitive damages. *Id.* At 14.

Plaintiff now moves for class certification under Fed. R. Civ. P. 23(a) and (b)(3).

## III.    LEGAL STANDARD

Courts have long recognized class actions as an essential device for "promoting judicial economy and efficiency" and "afford[ing] aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (citation and marks omitted); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Given these important public policy functions, courts "should give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and…promote judicial efficiency." *Id.* (*quoting In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir.1989) (internal quotation marks omitted); *see also Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2d Cir. 1968), *rev'd on other grounds* 417 U.S. 156 (1974) ("[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action.").

District courts possess "wide discretion" in certifying a class, and that discretion is entitled

to "substantial deference." *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010) (citation omitted) (may only be reversed if there was an abuse of discretion); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (the trial court is best positioned to bring expertise to bear in deciding certification). A district court's "account of the evidence" will not be reversed if it is "plausible in light of the record viewed in its entirety…." *Williams v. Martorello*, 59 F.4th 68, 86 (4th Cir. 2023) (citation omitted).

In making its findings, the court does not determine whether the plaintiff will prevail, and merits questions may be considered "to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) (citation omitted); *see also Eisen v*, 417 U.S. at 178.

To certify a class, the requirements of Rule 23(a) as well as one of the requirements of Rule 23(b) must be met. Rule 23(a) provides four factors, generally referred to as numerosity, commonality, typicality, and adequacy:

> the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Gunnells*, 348 F.3d at 423 (4th Cir. 2003). Plaintiff seeks certification under Rule 23(b)(3), which permits certification where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As set out below, Plaintiff's proposed class satisfies the

11

requirements of Rule 23 and class certification is appropriate[6].

## IV.   THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED

The Court should certify Plaintiffs' proposed class, as it is readily identifiable and otherwise satisfies the requirements of Rule 23.

### A.  The Class Is Readily Identifiable.

Before considering whether Plaintiff has met the requirements of Rule 23(a) and (b), the Court must determine as a threshold matter whether the proposed class members are "readily ascertainable based upon objective criteria." *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451 (D.N.J. 2009). Analogous to ascertainability, the Fourth Circuit has recognized an implied requirement that the proposed class be "readily identifiable." *Career Counseling, Inc. v. Amsterdam Printing & Litho, Inc.*, No. 3:15-CV-05061-JMC, 2017 WL 279768, at *3 (D.S.C. Jan. 23, 2017) (citing *EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014)). Plaintiffs need not identify every class member at class certification so long as there are objective criteria which can be used to do so. *Id.*; *see also Tillman v. Highland Indus., Inc.*, No. 4:19-CV-02563-SAL, 2021 WL 4483035, at *6 (D.S.C. Sept. 30, 2021).

Plaintiff's Complaint identifies the following class:

"All persons or entities who currently have ownership of any real waterfront property on Lake Wateree."

---

[6] The Court has broad discretion to alter or expand the class definition as it sees fit. *Walter v. Buffets Inc.*, No. 6:13-CV-02995-JMC, 2015 WL 3903382, at *6 (D.S.C. June 25, 2015) (collecting cases); *Polk v. Montgomery Cnty., Md.*, 782 F.2d 1196, 1201 (4th Cir. 1986) (noting that the "court in *Smith* has changed the definition of the class once and conceivably the trial judge may modify the definition again."); *Pennington v. Fluor Corp.*, 327 F.R.D. 89, 95 (D.S.C. 2018) ("The court is not bound by the class definition proposed in the Amended Complaint and can modify its language as the case progresses.").

Excluded from the Class are:

> Current and former officers and directors of the Defendants; members of the immediate families of the officers and directors of the Defendants; the Defendants' legal representatives, heirs, successors, assigns, any entity in which either of them has or had a controlling interest; any federal, state, or local governmental agencies; Class Counsel or any person retained or working on behalf of Class Counsel in furtherance of the litigation, any judges who have decided or are assigned to decide some or all issues in this case any persons related to a judge in a manner that would disqualify the judge from hearing the case; and any chambers staff working for the assigned judge or other courthouse staff who perform tasks relating to this matter.

Complaint at ¶ 121.

The proposed class definition encompasses two (2) requirements: (1) that Class members own real property; and (2) that the real property include frontage on Lake Wateree. As a matter of public record, Duke Energy owns and controls Lake Wateree and was responsible for the MCP. Plaintiffs allege (and Duke Energy's documents establish) that, in administering the MCP, Duke Energy sprayed transformer oil, used waste oil, and substances containing PCBs upon the shorelines of Lake Wateree and that this program thus impacted every lakefront property. There is nothing subjective in the definition. The properties either share boundaries with Lake Wateree or they do not.

Publicly available data demonstrates that the class includes at least 2,500 lakefront property owners. Moreover, the class comprises only *current* owners, thus eliminating any need to engage in extensive title research. Instead, the class is readily identifiable based on objective criteria and available information. *See e.g. Rowe* 262 F.R.D. 451 at 455 (finding that a class of residential water customers who currently owned their real property was readily ascertainable). *See Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981); *see also Sullivan v. Saint-Gabain Performance Plastics Corp.¸*No. 5:16-cv-125, 2019 WL 8272995, at * 4 (D.Vt. Aug. 23, 2019) (finding ascertainability

13

satisfied where the challenges of identifying class members were merely organizational). In this case, and based upon objective criteria, Plaintiff has satisfied his burden to demonstrate that the Class is readily identifiable.

### B.  The Class Satisfies the Requirements of Rule 23(a).

#### 1.  Numerosity is met because joinder is impracticable.

Numerosity requires that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts generally consider 40 or more plaintiffs as satisfying the numerosity requirement. *See, e.g., Millwood v. State Farm Life Ins. Co.,* No. 7:19-CV-01445-DCC, 2022 WL 4396199, at *3 (D.S.C. Sept. 23, 2022) (certifying class); *see* 1 *Newberg on Class Actions* § 3:12 (5th ed. 2021) ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone[.]"). As previously stated, the potential class comprises the owners of over 2,500 lakefront properties. *See*, **Ex. B**. A presumption of impracticability exists, and Plaintiff has satisfied his burden as to numerosity.

#### 2.  Commonality is met because Defendants' conduct creates common questions of law and fact.

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). It does not, however, require that all "or even most issues" be common; it is enough that "common questions exist." *Central Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C.), aff'd 6 F.3d 177 (4th Cir. 1993); *Gardner v. Country Club, Inc.*, No; 4:13-CV-03399- BHH, 2017 WL 11613887, at *3 (D.S.C. Jan. 26, 2017) (burden not high). In fact, a single common question that resolves a "central" issue in "one stroke" is sufficient. *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 377 (D.S.C. 2015) (citation omitted). "Where the injuries complained of by named plaintiffs allegedly result from the same unlawful pattern, practice, or policy of the defendants, the commonality requirement is usually satisfied." *Parker v. Asbestos*

14

*Processing, LLC*, No. 0:11-CV-01800-JFA, 2015 WL 127930, at *7 (D.S.C. Jan. 8, 2015).

Here, the Class member's unique rights as lakefront property owners were impacted by a single course of conduct: Duke Enegy's MCP. The majority of contested factual questions–whether and to what extent Duke Energy used toxic chemicals in the MCP, the decision to shift from these chemicals, the choice of detection limit in Duke Energy internal testing, Duke Energy's public representations and press releases to health officials, neighbors, and customers, the propriety of Duke Energy's disposal of waste oils and transformer oils through direct application to reservoir shorelines – are common to the Class and resolution of these issues is central to the validity of the Class claims. *See e.g., In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F.Supp.2d 891 (E.D.La. 2012) (quoting *M.D. v. Perry*, 675 F.3d 832, 839 (5th Cir. 2012)). Plaintiff has therefore satisfied his burden of demonstrating that common questions of law or fact exist.

### 3. Typicality is met because Plaintiff has the same claims and would be vindicated by the same rulings as the Class.

Typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical if they "arise from the same course of conduct leading to the class claims, and if the same legal theory underlies the claims or defenses." *Gardner*, 2017 WL 11613887, at *5 (D.S.C. Jan. 26, 2017) (citation omitted). However, "[c]omplete identity between the claims constituting each individual action is not required." *Parker*, 2015 WL 127930, at *7 (D.S.C. Jan. 8, 2015) (citation omitted). Typicality and commonality often overlap, and they both are routinely satisfied where claims arise from a standard course of conduct or uniform documents. *See, e.g.*, *Brunson v. Louisiana-Pac. Corp.*, 266 F.R.D. 112, 120 (D.S.C. 2010).

This case involves a single source of contamination. Plaintiff brings property damage

claims arising from Duke Energy's MCP, during which Plaintiff alleges Duke Energy administered thousands of gallons of toxic substances to the shoreline of Lake Wateree. In similar cases, district courts routinely find the claims of the named representative are typical of those of the class. *See Bates v. Tenco Services, Inc.*, 132 F.R.D. 160 (D.S.C. 1990); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability*, 241 F.R.D. 185, 198 (S.D.N.Y. 2007) ("Each of the named Plaintiffs' claims arise from the same alleged course of conduct (i.e. the gasoline leak) that gives rise to the claims of other class members. Their claims are also based on the same legal theories").

The FAC includes causes of action for negligence, nuisance, trespass, and strict liability. Plaintiff's claims involve the same course of conduct as every member of the Class and Plaintiff's remedies are the same as those remedies available to the Class. Plaintiff alleges damages including diminution in the value of his lakefront property as well as deprivation of the use of natural resources specifically available to lakefront property owners. Each Class member has suffered identical injury and the damages are susceptible to common proof. While the amount of damages may vary, the type will not. Without question, the natural resources within Lake Wateree have been compromised. Plaintiff intends to establish that Duke Energy caused this contamination, and that this contamination resulted in damage to the property owners, including natural resource damages[7]. Where the Plaintiff's claims and those of the class members involve a common nexus of fact, and common legal theories, typicality is generally

---

[7] In the parties' recent 26.03 submission, Plaintiff identified potential experts in the fields of real estate appraisal and natural resources economics. These are among the experts that Plaintiff is likely to disclose in accordance with the case scheduling order. For purposes of class certification, however, damages need not be susceptible of measurement across the entire class. *See, e.g., FWK Holdings, LLC v. Merck & Co.*, 7 F.4th 227 (4th Cir. 2021) (finding that the district court did not err in certifying an anti-trust class where the plaintiffs intended to establish damages through class wide averages, common to the class).

satisfied. Plaintiff has met his burden of establishing that his claims are typical of the class.

### 4. No conflicts of interest exist and Plaintiff has and will fairly and adequately represent the interests of the Class.

Adequacy involves two questions: "(i) whether plaintiffs have any interest antagonistic to the rest of the class; and (ii) whether plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation." *S.C. Nat. Bank v. Stone*, 139 F.R.D. 325, 329–30 (D.S.C. 1991) (citation and marks omitted). Counsel "are presumed competent and sufficiently experienced to prosecute the action on behalf of the class." *Matthews v. Buel, Inc.*, No. CA 7:11- 162-TMC, 2012 WL 1825273, at \*2 (D.S.C. May 18, 2012).

### a. *Plaintiff has no interests antagonistic to the Class*

Plaintiff is a lakefront property owner with real property adjoining Lake Wateree and has alleged claims typical of the class.

As stated in the FAC:

> *Adequacy*: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel with substantial experience in litigating complex cases, including class actions. Plaintiffs' claims are representative of the claims of the other members of the Class. That is, Plaintiffs and members of the Class sustained damages as a result of Defendants' uniform conduct. Plaintiffs also have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their Counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiffs nor counsel have any interest adverse to other Class Members. Rather, Plaintiffs share the same interest as all Class Members in remedying Defendants' unlawful conduct.

FAC at ¶ 128.

Plaintiff knows of no reason that he would be unable to fairly represent the interests of the class. Plaintiff is aware of no unique defenses applicable to him but not other lakefront property owners. Plaintiff is therefore competent to serve as the Class representative in this matter.

### b. *Plaintiff's Counsel are qualified to conduct the proposed litigation*

17

Counsel for Plaintiff are experienced in class and mass action practice and have the resources, both financial and otherwise to prosecute this case. (*See* **Ex. M**, Firm Resumes). Collectively, Counsel have decades of practice among them and have been involved in multiple complex and class action cases, including representation in mass tort cases and on behalf of the State of South Carolina. They have vigorously pursued this case from inception – including early motions' practice, initial discovery, and by advancing the funds necessary for litigation. Counsel is dedicated to continuing to pursue this case.

Plaintiff has no interests antagonistic to the Class and Counsel are of capable of pursuing this litigation. Plaintiff will adequately represent the interests of the Class.

### C.  The Class Satisfies the Requirements of Rule 23(b).

Plaintiff seeks certification under Rule 23(b)(3) which provides that a class action is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance and superiority requirements are satisfied here.

### 1.  Common Questions of Fact and Law Predominate.

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. The predominance test is similar to the commonality test, but more stringent. *Id.* The question is "qualitative rather than quantitative." *Gunnells*, 348 F.3d at 429 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996)). A single important issue "central to the validity of each one of the claims in a class action, if it can be resolved in one stroke, can justify class treatment." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 339, 131 S. Ct. 2541, 2551 (2011) (marks omitted);

18

*see also Klay v. Humana, Inc.,* 382 F. 3d 1241, 1254 (11th Cir. 2004) ("not necessary that all questions of law or fact be common"). "The entire notion of predominance implies that the plaintiffs' claims need not be identical, and, as the Supreme Court has noted, a class can meet this requirement even though other important matters will have to be tried separately." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (citation omitted).

Liability is "a focal point for consideration of predominance" and thus where "basic liability can be established readily by common issues" then certification is appropriate. *Gardner*, 2017 WL 11613887, at \*6 (citing *Gunnells*, 348 F.3d at 428). Where class members "were exposed to the same risk of harm," by being subject to a common practice or policy for example, predominance is generally met. *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010). The need for "individualized proof of damages" will not defeat predominance. *Gunnells*, 348 F.3d at 429; *Thomas v. Louisiana-Pac. Corp.*, 246 F.R.D. 505, 516–17 (D.S.C. 2007). Predominance "is normally satisfied where there is an essential common factual link, such as standardized documents and practices." *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 106 (W.D. Va. 2000) (citation omitted). Again, as with all class certification issues, Plaintiffs need not demonstrate at this stage that they will ultimately succeed on their claims. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015).

The MCP, which "exposed [class members] to the same risk of harm," is the type of common practice or policy that the Fourth Circuit has held satisfies predominance. *Stillmock*, 385 F. App'x at 273 (4th Cir. 2010). The process itself was identical and applied uniformly across the Class. *See, e.g.*, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 157 (D.S.C. 2018) (application of "same overdraft accounting policy" supported predominance). By definition every class member owned property sharing a boundary with Lake

19

Wateree, and was impacted in the same manner by Defendants' conduct.

Plaintiff's Complaint includes common questions relating to Defendants' conduct. These questions include: (1) whether Duke Energy's use and/or continued use of transformer oil in its MCPwas reasonable; (2) whether PCBs from Duke Energy's intentional spraying of transformer oil interfered with Class members' inalienable property rights including littoral and riparian rights; (3) whether the continued presence of PCBs from Duke Energy's MCP has impacted the value and use of the Class members' properties including the use and access to unadulterated natural resources such as fish and other aquatic life; (4) whether Duke Energy actively concealed their role in contaminating Lake Wateree; (5) whether Duke Energy failed to exercise due and reasonable care in managing the MCP upon Lake Wateree; (6) whether Duke Energy was exclusively responsible for the control, management, and maintenance of Lake Wateree; (7) whether Duke Energy's undertaking surveys and studies to test Lake Wateree and other impacted waterways for PCB contamination using falsely elevated detection levels was done in an effort to conceal Duke Energy's role in contaminating Lake Wateree; and (8) whether Duke Energy knew or should have known that errant PCB disposal practices would result in permanent contamination to impacted waterways. *Id*. at ¶ 125. These questions focus on Duke Energy's knowledge and conduct, and the same documents, testimony, and operative facts will apply to every homeowner's claim. These common questions predominate over any unique issues that may exist.

Plaintiff brings causes of action for (1) negligence; (2) strict liability; (3) trespass; and (4) nuisance. These legal claims are also well suited for class certification and will be determined by the same methods of proof.

   *a.  Negligence*

"An action sounding in negligence requires the plaintiff to show a duty on the part of the

20

defendant, a breach of that duty by an act of omission or commission, and that such breach of duty may be the proximate cause of plaintiff's injuries." *Sherill v. Southern Bell Tel. & Tel. Co.*, 260 S.C. 294, 197 S.E.2d 283 (S.C. 1973); *see Babb v. Lee County Landfill, SC, LLC*, 405 S.C. 129, 153, 747 S.E.2d 468 (S.C. 2013) (to prevail on a claim of negligence arising from offensive odors, the plaintiff must still establish the requisite elements of duty, breach, causation, and damages). Where an act is voluntarily undertaken, "the actor assumes the duty to use due care." *Miller v. City of Camden*, 494 S.E.2d 813, 815 (S.C. 1997) (citing *Russell v. City of Columbia*, 406 S.E.2d 338, 340 (S.C. 1991)); *see also, e.g.*, *Edwards v. Lexington Cnty. Sheriff's Dep't*, 688 S.E.2d 125, 128 (S.C. 2010) (noting there are five exceptions to the general rule that one has no duty to act, including where the defendant has a special relationship to the plaintiff and where the defendant voluntarily undertakes a duty). Generally, "[o]ne who controls the use of property has a duty of care not to harm others by its use." *Miller*, 494 S.E.2d at 815.

Whether Duke Energy owed a duty of care and whether Duke Energy breached that duty will be decided in the same manner, and by the same proof, for every lakefront property owner.

b. *Strict Liability for Ultrahazardous Activity*

Under South Carolina law, whether a particular activity is designated as ultrahazardous must be decided on a case-by-case basis. *Ravan v. Greenville County¸*315 S.C. 447, 434 S.E.2d 296 (S.C. Ct. App. 1993); *T&E Industries, Inc. v. Safety Light Corp.*, 123 N.J. 371, 587 A.2d 1249, 1259 (N.J. 1991). In this case, the question of whether the MCP constituted an ultrahazardous activity is the same as to every Class member.

c. *Trespass*

South Carolina courts have defined trespass as "[t]he unwarrantable entry on land in the peaceable possession of another." *Tillman*, 486 F. Supp. 3d at 1040-41 (citing *Ralph v.*

21

*McLaughlin*, 834 S.E.2d 213, 229 (S.C. Ct. App. 2019)); *see also Snow v. City of Columbia*, 409 S.E.2d 797, 802 (S.C. Ct. App. 1991). Trespass exists "without regard to the degree of force used, the means by which the enclosure is broken, or the extent of the damage inflicted." *Snow*, 409 S.E.2d at 799. An actionable trespass requires "an affirmative act." *Tillman*, 486 F. Supp. 3d 1026. In other words, "the invasion of the land must be intentional, and the harm caused must be the direct result of that invasion." *Id.* To recover for trespass, a plaintiff must demonstrate: "an invasion (a) which interfered with the right of the exclusive possession of the land, and (b) which was a direct result of some act committed by the defendant." *Graham v. Town of Lotta*, 789 S.E.2d 71, 86 (S.C. Ct. App. 2016) (quoting *Prosser and Keeton on Torts* § 13).

Plaintiff has alleged that Duke Energy administered its MCP on the shorelines of Lake Wateree. Whether this constitutes an affirmative act of trespass will be determined under South Carolina law, and will be the same for every Class member.

    *d. Nuisance*

South Carolina recognizes a landowner's right to be free from the unauthorized infringement of the peaceful use and enjoyment of her property. *See Babb v. Lee Cty. Landfill SC, LLC*, 747 S.E.2d 468, 473 (S.C. 2013); *Clark v. Greenville Cnty.*, 437 S.E.2d 117, 119 (S.C 1993) ("Nuisance law is based on the premise that '[e]very citizen holds his property subject to the implied obligation that he will use it in such a way as not to prevent others from enjoying the use of their property'"); *Peden v. Furman University*, 151 S.E. 907, 912 (S.C. 1930); *Deason v. Southern Railway*, 140 S.E. 575, 577 (S.C. 1914). To demonstrate nuisance, a landowner must prove unreasonable interference with the use and enjoyment of property. *Johnson v. Hoechst Celanese Corp.*, 453 S.E.2d 908 (S.C. Ct. App. 1995); *Strong v. Winn-Dixie Stores, Inc.*, 125 S.E.2d 628, 632 (S.C. 1962) ("A nuisance is anything which works hurt, inconvenience, or

damages; anything which essentially interferes with the enjoyment of life or property" (internal citations omitted).

Whether Duke Energy's MCP, which involved administering toxic substances to Lake Wateree, constitutes a nuisance as to Duke Energy's lakefront neighbors will be determined under South Carolina law, and will require the same proof, including documents, and testimony, for every Class member.

As set forth herein, Duke Energy's exclusive control over Lake Wateree and the administration of the MCP are central to the factual issues and legal claims in this case and in every Class member's case. Plaintiff has demonstrated that common questions of law and fact predominate over any individualized claims.

**a. Class treatment is the superior method to adjudicate these claims.**

To determine whether proceeding as a Class is a superior method of adjudication, Rule 23(b)(3) provides factors to be considered:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Here, each factor weighs in favor of certification.

> i.    *The Class Members' interests in individually controlling the prosecution*

Individual litigation in this case would inhibit, rather than enhance, Class members' rights. The Class claims arise under South Carolina law, which will be applied uniformly to each Class member. Duke Energy concealed its role in contaminating Lake Wateree and the individual proof required to demonstrate this claim – though extensive – will be wholly redundant. Each Class member will rely upon the same proof, including fact and expert discovery. Where there is a likelihood that individual trials would create enormous redundancy, including duplicative

23

discovery, testimony by the same witnesses, and relitigation of similar or identical legal issues, district courts have appropriately determined class certification is superior to individual litigation. *Spurlock v. Wexford Health Sources, Inc.*, C/A No. 3:23-cv-0476, 2025 WL 2085053, * 52 (S.D.W.Va. Jul. 24, 2025) ("[I]f common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain") (quoting *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 241 (E.D.Va. 2015)).

Each Class member in this case was impacted in the same way by Duke Energy's conduct. Indeed, Duke Energy's own documents confirm that the MCP was conducted in a uniform manner. The Class will benefit from consistent adjudication of common claims. In addition, proceeding as a class will provide court access for potentially uneconomical claims, when compared with the expenses of litigation. *See Gunnels*, 348 F.3d 417, 426.

### ii.     The Extent and Nature of Existing Litigation Relating to the MCP

Plaintiff is aware of no other claims by Lake Wateree property owners relating to the MCP. The absence of other litigation underscores that property owners were not on notice of their claims. In this case, which will necessitate extensive written and testimonial discovery, individual litigation is also cost prohibitive and would likely discourage individual claims. *See Stillmock v. Weis Mkts., Inc*., 385 Fed.Appx. 267, 275 (4th Cir. 2010) (holding a class action was superior when "there is no indication… that class members would have a strong interest in individual litigation"); *see also Bertulli v. Independent Ass'n of Continental Pilots*, 242 F.3d 290, 299 (5th Cir. 2001) (noting that the plaintiffs met Rule 23(b)(3)'s superiority requirement, and finding that even in instances where attorney's fees are available, a class action may nevertheless be more feasible than individual actions).

### iii.     The Desirability of Concentrating the Litigation in this Forum

24

The real property that underscores this lawsuit is in this forum and this court is adept at interpreting the nuances of South Carolina law that will define the action. There is no other forum hosting litigation. This factor weighs in favor of superiority.

   *iv.*  *Case Management*

Manageability focuses on whether administration of the class will enhance efficiency. The law of South Carolina will apply to every claim in this case, and the class is limited to property owners in South Carolina. Duke Energy's liability will be proven with its own policies, procedures, omissions and commissions. Class members have suffered uniform categories of damages susceptible to common proof (i.e. whether and to what extent the degradation of natural resources applies to the class members). In comparison to other complex litigation, involving multiple forums, and out-of-state Class members, managing this case after certification will be relatively straightforward. Class treatment is the superior method for adjudicating this dispute.

### a. The Undersigned Should be Appointed Class Counsel.

Finally, Plaintiff requests that the Court appoint Savage, Royal & Sheheen, LLP, Wyche, P.A., and Solomons and Speights as Class Counsel. Rule 23(g) requires that a "court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). It provides four factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

Plaintiffs' counsel respectfully submit that they have, and will continue to, "fairly and

25

adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Counsel has decades of experience prosecuting class and mass tort cases, and complex litigation, and has and will continue to provide financial and other resources to the litigation. Appointing the undersigned as Class Counsel is therefore appropriate.

### III.     CONCLUSION

The Court should certify Plaintiffs' proposed Class as it is readily identifiable and easily satisfies the requirements of Rule 23. Numerosity is satisfied as the class exceeds 2,600 members. Numerous common questions exist because Plaintiff's claims turn on Defendants' common practices, policies and procedures, as well as Defendants' public representations relating to the offending conduct. These central common questions outweigh any individual issues which may arise and therefore satisfy the predominance requirement. Plaintiff's claims are not merely typical of the Class, but identical, and the interests of Plaintiff are identical to those of the Class. Class treatment is the superior method for adjudicating this dispute, and management of this litigation going forward presents no manageability issues. Therefore, for the foregoing reasons and based upon the law and evidence provided, Plaintiff respectfully requests that the Court grant this motion and certify the proposed class, and appoint the undersigned as Class Counsel.

Respectfully submitted,

WYCHE, P.A.

s/Jessica L. Fickling

Jessica L. Fickling (Fed. ID No. 11403)
Jim May (Fed. ID No. 11355)
M. Lucy Dinkins (Fed. ID No. 11961)
P.O. Box 12247
Columbia, SC 29211-2247
P: (803) 254-6542
jfickling@wyche.com

jmay@wyche.com
ldinkins@wyche.com

SAVAGE, ROYAL & SHEHEEN, LLP

Vincent A. Sheheen (Fed. ID No. 7016)
Austin M. Sheheen (Fed. ID No. 13938)
P.O. Drawer 10
Camden, S.C. 29021
P: (803) 432-4391
vsheheen@thesavagefirm.com
asheheen@thesavagefirm.com

SPEIGHTS & SOLOMONS, LLC

A. Gibson Solomons, III (Fed. ID No. 7769)
Post Office Box 685
Hampton, SC 29924
P: (803) 943-4444
gsolomons@speightsandsolomons.com
Attorneys for Plaintiffs

October 1, 2025